Laconia Family Division
No. 2006-833

IN RE JUVENILE 2006-833

Argued: October 18, 2007
Opinion Issued: December 4, 2007

*Normandin, Cheney & O'Neil, PLLC*, of Laconia (*William D. Woodbury* on the brief and orally), for the respondent.

*Kelly A. Ayotte*, attorney general (*Jill A. Desrochers*, attorney, on the brief, and *James W. Kennedy, III*, attorney, orally), for the New Hampshire Division for Children, Youth and Families.

*Disabilities Rights Center, Inc.*, of Concord, (*Ronald K. Lospennato* and *Amy B. Messer* on the brief, and *Ms. Messer* orally), as *amicus curiae*.

HICKS, J. The respondent-mother filed a petition for writ of certiorari, *see* SUP. CT. R. 11, challenging an order of the Laconia Family Division (*Martin*, J.) directing the New Hampshire Division for Children, Youth and Families (DCYF) to file a petition to terminate her parental rights. We deny the respondent's petition.

The following facts appear in the record before us or are not disputed by the parties. The juvenile was born on January 19, 2004. In January 2005, DCYF filed petitions for neglect against the respondent and the juvenile's father, *see* RSA 169-C:7 (2002), alleging that the juvenile "ha[d] been diagnosed with failure to thrive by two independent medical providers." Following a preliminary hearing in February, DCYF was given legal custody of the juvenile, who was placed in a licensed foster home. The juvenile has remained in the same foster home throughout these proceedings. Following a two-day hearing in February and April 2005, findings of neglect were entered against both parents. The parents were ordered to, among other things: (1) "complete anger management and/or batterers' intervention assessments"; (2) "satisfactorily complete therapeutic parenting classes"; (3) complete psychological evaluations; and (4) "satisfy and comply with all recommendations of both their psychological and anger management and/or batterers' intervention evaluations."

Several hearings were held in the family division from May 2005 through April 2006 to review the parents' progress and their compliance with court orders aimed at correcting the conditions leading to the neglect findings. The respondent's mental health was a primary concern throughout these proceedings. At a review hearing on November 9, 2005, the respondent requested an order from the court requiring the State to cover the co-pays on her mental health medications. The court issued an order requiring the respondent to "continue to address her mental health needs" and, through the services provided by the State, "meaningfully participate in individual outpatient counseling and ... follow any recommendations made by her counselor." The court further noted:

"DCYF shall use all reasonable efforts to help [the respondent] to receive [her] medically recommended medicine."

In a DCYF report dated January 30, 2006, DCYF responded to the court's order regarding the respondent's medications: "The Division is not able to assist clients with payment of prescriptions." DCYF also noted in its report that the respondent had ceased attending individual counseling sessions as ordered by the court.

Following a hearing in early February 2006, the court issued an order stating: "DCYF [is ordered] to evaluate [the respondent's] need for medication to develop appropriate parenting skills. At the Permanency Hearing, [the respondent] may claim lack of assistance to sustain corrective action by expert opinion if medications are not available." The court also found that the respondent's "psychological evaluation raised concerns as to her ability to parent."

On March 8, DCYF sent a letter to the respondent with information on three different resources that could assist her in paying for her medications, stating that she would have to contact the various agencies directly. It is unclear whether the respondent pursued these resources. On March 15, the respondent filed a motion asking the court to order that DCYF pay for her prescribed medications. The motion included a letter from a nurse practitioner listing all of the respondent's medications and their purpose, including medications alleged to be "essential to maintain [the respondent's] emotional status and ability to parent."

The motion was heard at the scheduled permanency hearing in April. Before the hearing, the court-appointed special advocate and DCYF filed reports recommending termination of the parental rights of the respondent and the father and adoption of the minor by her foster parents. After the hearing, the Court (*McKenna*, J.) issued an order declining to adopt this recommendation:

> [The court] find[s] that the DCYF has made reasonable efforts at reunification, but has not exhausted all possible alternatives. . . .
>
> . . . .
>
> A significant factor in [the respondent's] difficulties in the discharge of her parental duties is her own mental health issues for which the family cannot always afford all necessary medications. . . .
>
> . . . .
>
> It is hereby ordered that:
>
> 1. DCYF shall assist [the respondent] in the effort to obtain financial aid for her medications.

On May 10, DCYF sent another letter to the respondent with a prescription card which could be used to obtain a discount on medications and a list of pharmacies in her area which accept the card. In late August, DCYF filed a permanency report with the court, detailing these efforts to assist the respondent to pay for her medications.

At a second permanency hearing held on September 6, DCYF reiterated that the respondent had failed to address her mental health issues or attend individual counseling sessions as required by the court. The respondent represented that she had recently joined a program that would help her obtain her necessary medications. She requested more time to see whether the medications would help to resolve her mental health issues.

On October 12, the Court (*Martin*, J.) issued a permanency order finding, among other things, that: DCYF had made "reasonable efforts to finalize the permanency plan of reunification between the child[]" and the parents; the respondent was only in partial compliance with prior orders; and the respondent "cannot demonstrate that return of custody is in the best interests of the child[]" in part because she had failed to address her "numerous and significant mental health needs." The court ordered DCYF to proceed with a termination of parental rights petition against both parents in the probate court. *See* RSA 169-C:24-a (Supp. 2007). The respondent then filed this petition for writ of certiorari.

Because there is no statutory right to *de novo* appeal in superior court from a post-final dispositional order in a RSA chapter 169-C proceeding, a party seeking review may file a petition for writ of certiorari in the superior or supreme court. *See In re Diane R.*, 146 N.H. 676, 678-79 (2001).

> Certiorari is an extraordinary remedy that is not granted as a matter of right, but rather at the discretion of the court. We exercise our power to grant the writ sparingly and only where to do otherwise would result in substantial injustice. Certiorari review is limited to whether the trial court acted illegally with respect to jurisdiction, authority or observance of the law, or unsustainably exercised its discretion or acted arbitrarily, unreasonably, or capriciously.

*Petition of State of N.H. (State v. San Giovanni)*, 154 N.H. 671, 674 (2007) (citations omitted).

The respondent asserts that the family division erred as a matter of law when it found that DCYF had made reasonable efforts to finalize the permanency plan of reunification between the juvenile and herself. This was evidenced, she suggests, by DCYF's refusal to pay for her medications and its failure to "secure alternative means of payment." The respondent

argues that this error violated: (1) RSA 169-C:2 (2002), RSA 169-C:24-a and RSA 170-C:5, III (2002); (2) her right to due process; and (3) her right to equal protection.

*I. Statutory Arguments*

"Where a child has been in an out-of-home placement pursuant to a finding of child neglect or abuse, under the responsibility of the state, for 12 of the most recent 22 months," RSA 169-C:24-a, I(a), the State may be required to file a petition for termination of parental rights. The State cannot file a petition for termination of parental rights, however, if "[t]he state has not provided to the family of the child, consistent with RSA 170-C:5, III, such services and reasonable efforts as the state deems necessary for the safe return of the child to the child's home." RSA 169-C:24-a, III(c). RSA 170-C:5, III provides that a petition for termination of parental rights may be granted where the parents have failed to correct the condition leading to the finding of neglect "within 12 months of the finding despite reasonable efforts under the direction of the [court] to rectify the conditions."

█ In assessing the State's efforts, the family division must consider whether the services provided have been accessible, available and appropriate. *In re Jonathan T.*, 148 N.H. 296, 301 (2002); RSA 169-C:24-a, III(c). However, we have recognized that the State's ability to provide adequate services is constrained by its staff and financial limitations. *In re Juvenile 2003-195*, 150 N.H. 644, 648 (2004). "Thus, the State must put forth reasonable efforts given its available staff and financial resources to maintain the legal bond between parent and child." *Id.* (quotation omitted). "The word reasonable is the linchpin on which the department's efforts in a particular set of circumstances are to be adjudged . . . ." *In re Antony B.*, 735 A.2d 893, 900 (Conn. App. Ct. 1999).

The respondent contends that "when it became evident that [her] best recourse in dealing with her mental health issues was to obtain her necessary medications, DCYF . . . did not take the necessary time and effort required to make sure that the [respondent] was able to procure these medications." We disagree.

█ We believe that DCYF's actions were sufficient to constitute "reasonable efforts" under RSA 169-C:24-a and RSA 170-C:5, III. By letter dated March 8, 2006, DCYF provided the respondent with information and contact numbers for three different agencies that could help pay for her medications. DCYF also provided the respondent with a prescription card that provided a discount on medications and a list of numerous pharmacies in her area which accept the card. The record is

unclear as to whether the respondent pursued any of the resources referred to her. DCYF, however, did the research for the respondent on these various programs and provided all the information to her, informing her that it was her responsibility to contact them directly. Taking into consideration DCYF's limitations, regarding both its staff and finances, the efforts made by DCYF in helping the respondent to obtain financial assistance to pay for her medications were reasonable. *See In re Juvenile 2003-195*, 150 N.H. at 648.

This accords with our prior decisions. In *Jonathan T.*, we held that DCYF made reasonable efforts to help the parents with reunification by preparing checklists to help the family develop routines. *Jonathan T.*, 148 N.H. at 303. In this manner, DCYF provided aid to help the parents become better caregivers to their children. In the present case, DCYF provided aid to help the respondent obtain financial assistance for medications. The State's role is to "[p]rovide assistance to parents to deal with and correct problems." RSA 169-C:2, I(c). Its role is not to assume the full weight of the parents' responsibilities. *Cf. In re Diana P.*, 120 N.H. 791, 798 (1980) (recognizing that DCYF must "work with the natural parents to enable them to provide a family for their own children" (quotation omitted)), *cert. denied*, 452 U.S. 964 (1981), *overruled on other grounds by In re Craig T.*, 147 N.H. 739, 744-45 (2002). "Reasonable efforts means doing everything reasonable, not everything possible." *In re Antony B.*, 735 A.2d at 900 (quotation and brackets omitted). The respondent must make her own effort in conjunction with the efforts made by DCYF.

Further, while we recognize that under RSA 169-C:2, I(b), one of the purposes of the Child Protection Act is to "[p]reserve the unity of the family whenever possible," this does not trump the other goals listed under RSA 169-C:2, I, such as: to "[p]rotect the safety of the child," and to "[t]ake such action as may be necessary to prevent abuse or neglect of children." The family division found that since the original finding of neglect, the respondent failed to "demonstrate that [the child's] health is not likely to suffer if returned to her care," the child "lost weight during the three-month period of time in which the parents had unsupervised visitation," and the respondent "has not participated meaningfully and consistently in the services ordered by this court." Accordingly, the family division found that the respondent did not demonstrate that "the child[] will not be endangered . . . if returned home," nor that "return of custody is in the best interests of the child[]." The respondent does not dispute these findings in her petition. We hold, therefore, that the family division's order

requiring DCYF to file a petition for termination of parental rights was in accord with the statutes cited by the respondent.

Accordingly, based upon the record before us, we cannot say that the family division unsustainably exercised its discretion or acted arbitrarily, unreasonably, or capriciously in finding that the State made reasonable efforts to reunify the respondent with the juvenile.

We do not reach the issue raised by the *amicus* regarding the application of the Americans with Disabilities Act to these proceedings because this issue was not raised in the family division and therefore is not preserved for our review. *Syncom Indus. v. Wood,* 155 N.H. 73, 78 (2007).

## II. Due Process and Equal Protection

The respondent argues that DCYF's failure to make reasonable efforts to pay for or secure her medications violates her right to due process and equal protection "under New Hampshire law." These arguments, however, were never raised before the family division. *See Petition of Support Enforcement Officers,* 147 N.H. 1, 8 (2001) (declining to review constitutional argument in petition for writ of certiorari that was not raised below). Accordingly, we decline to address them.

*Petition denied.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.