Board of Education
No. 2010-225

APPEAL OF KEELIN B.
(New Hampshire State Board of Education)

Argued: March 10, 2011
Opinion Issued: May 12, 2011

Daniel B. and Lisa B., petitioners, by brief, and Mr. B., orally, *pro se.*

*Soule, Leslie, Kidder, Sayward & Loughman, P.L.L.C.*, of Salem (*Barbara F. Loughman* and *Maureen L. Pomeroy* on the brief, and *Ms. Loughman* orally), for respondent Sunapee School District.

LYNN, J. The petitioners, Daniel B. and Lisa B., appeal the decision of the New Hampshire State Board of Education upholding a thirty-four day school suspension imposed on their daughter, Keelin B., by respondent Sunapee School District. We affirm in part, vacate in part and remand.

The following facts are drawn from the record. Principal Sean Moynihan received an email at his Sunapee School District email account, purportedly authored by a particular student, which contained a sexually suggestive message. The principal replied, informing the sender that he intended to notify the police and discover the identity of the sender, and encouraging the sender to come forward voluntarily. A Sunapee school teacher also received an email at her school district email account, purportedly authored by the same student, which contained vulgar and sexually explicit language. The teacher forwarded the message to the principal, asking whether the sender could be identified. Both recipients opened their respective email messages on their home computers. Because Principal Moynihan could not identify who sent the emails, he contacted the Sunapee Police Department, and after an investigation, the police determined that the emails originated from a computer in Keelin B.'s home. In November 2008, Keelin B. provided a statement to the police acknowledging that she had "logged on to my dad's black computer at my house," and stating "I made up a Gmail account under the name of [another student]. This only happened one day, and only two emails were sent; one to Mr. Moynihan, and one to [the teacher]." The superintendent for the Sunapee School District, Brendan Minnihan, met with Keelin B. and her parents, and determined that Keelin B. had sent both emails under the name of a different student. He imposed a ten-day school suspension, from November 19 through December 5, and informed her parents that he would recommend to the Sunapee School Board that it impose a long-term suspension under RSA 193:13, II (2008). By email dated November 19, Keelin B. apologized to the teacher for the "rude and inap[p]ropriate" email, stating that she now realized "how horrible that was to do to you and everyone else." Her parents appealed the superintendent's suspension decision to the school board and requested that it dismiss the request for a long-term suspension.

The school board conducted a hearing and voted to continue Keelin B.'s suspension through January 23, 2009, pursuant to RSA 193:13 (2008), bringing the total suspension period to thirty-four school days. It identified several rules in the student handbook that were violated by the student's misconduct, including the "Unacceptable Use" policy relating to use of the school district's computer information system, several sections of the "Behavior and Discipline Code," and the "Harassment (Anti-Harassment) Policy." Ultimately, the school board decided:

> Keelin created an email account under the name of another student and using that account participated in sending two emails, one to the principal and one to a teacher, . . . at their school email addresses. The emails were offensive, abusive, harassing, vulgar and profane, causing embarrassment and distress to the student, in whose name they were sent, and the recipients.

> These facts show that Keelin neglected or refused to conform to the reasonable rules of the school, for which the School Board may impose a long term suspension under RSA 193:13. Keelin's conduct violated the District's Acceptable (Computer) Use Policy, Behavior Code and Harassment (Anti-Harassment) Policy.

In addition to continuing the suspension, the school board required Keelin B. to perform community service, and also made provisions for her to keep up with her course work. The school board informed the petitioners of their right to appeal to the state board of education "[p]ursuant to RSA 193:13 and New Hampshire Department of Education Regulations, ED 317.04 (e) and (f)."

The petitioners appealed to the state board of education, and a hearing officer conducted a hearing. The officer determined that Keelin B.'s conduct violated the "Acceptable Use Policy" regarding computers and other student conduct and discipline policies in the student handbook, stating: "The infractions here go well beyond the misuse of a computer." She concluded that the misconduct qualified as "an act of neglect or refusal to conform to the reasonable rules of the school," and that the school district's policies "are substantially in harmony with NH RSA 193:13 and Rule ED 317:04." Ultimately, she determined, "Though I may find the actions of the Superintendent and the Sunapee School Board harsh considering the future of the young Student, careful examination yields no basis to overturn the decision of the local school board." The state board of education adopted the hearing officer's recommendation, and after granting the petitioners a rehearing, the board upheld its decision. This appeal followed.

The petitioners first argue that the state board of education erred in upholding the school board's decision because the school board acted in excess of statutory authority and in violation of Rule 317.04 by imposing a suspension in excess of ten days for neglect or refusal to conform to reasonable rules of the school and school policies. We disagree.

■ Resolution of this appeal requires us to construe statutes and regulations relating to school discipline, and we apply the same principles of construction in interpreting both. *See Vector Mktg. Corp. v. N.H. Dep't of Revenue Admin.*, 156 N.H. 781, 783 (2008). When construing statutes and administrative regulations, we first examine the language used, and, where possible, we ascribe the plain and ordinary meanings to words used. *See Appeal of Union Tel. Co.*, 160 N.H. 309, 317 (2010); *Vector Mktg.*, 156 N.H. at 783. Courts can neither ignore the plain language of the legislation nor add words which the lawmakers did not see fit to include. *Appeal of Garrison Place Real Estate Inv. Trust*, 159 N.H. 539, 542 (2009). Further, "administrative officials do not possess the power to contravene a statute." *Appeal of Anderson*, 147 N.H. 181, 183 (2001) (quotation omitted). Therefore, when interpreting administrative rules, we are mindful that such rules may only "fill in the details to effectuate the purpose of the [enabling] statute," and "may not add to, detract from, or modify the statute which they are intended to implement." *Id.* (quotation omitted).

This court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. *Appeal of Union Tel. Co.*, 160 N.H. at 317. We review the interpretation of both statutes and administrative rules *de novo. See Appeal of Gamas*, 158 N.H. 646, 648 (2009) (interpreting statute); *Appeal of Murdock*, 156 N.H. 732, 735 (2008) (interpreting administrative rule). With this framework in mind, we turn to the statutes and regulations relevant to this appeal.

■ Under RSA chapter 193 governing "Pupils," the legislature authorized local school authorities to suspend and expel students. *See* RSA 193:13. Specifically, RSA 193:13 authorizes: (1) the superintendent or chief administering officer, or a representative "to suspend pupils from school for a period not to exceed 10 school days for gross misconduct or for neglect or refusal to conform to the reasonable rules of the school"; (2) the school board or a designated representative "to continue the suspension of a pupil for a period in excess of 10 school days" following a hearing; and (3) the school board to expel any pupil "for gross misconduct, or for neglect or refusal to conform to the reasonable rules of the school, or for an act of theft, destruction, or violence as defined in RSA 193-D:1, or for possession of a pellet or BB gun, rifle, or paint ball gun." RSA 193:13, I, II; *see also* RSA 193:13, III (requiring the expulsion for a period of not less than 12

months of "[a]ny pupil who brings or possesses a firearm . . . in a safe school zone as defined in RSA 193-D:1 without written authorization from the superintendent or designee"). The state board of education and local school authorities have statutory authority to create rules and policies, respectively, regarding student conduct and discipline. *See, e.g.*, RSA 21-N:9, II(x) (2000); RSA 193:13, IV; RSA 193-D:2 (2008); RSA 194:3-d (2008).

RSA chapter 193-D specifically relates to acts of theft, destruction, or violence committed in a safe school zone. *See* RSA 193-D:1, II (2008) (defining "[s]afe school zone" as "an area inclusive of any school property or school buses"); RSA 193-D:1, I (2008) (defining acts of "theft, destruction, or violence" to include homicide, assault, sexual assault, criminal mischief). It compels public or private school employees who have witnessed or have information "from the victim of an act of theft, destruction, or violence in a safe school zone [to] report such act in writing immediately to a supervisor," and requires the information to be provided to the local law enforcement authority. *See* RSA 193-D:4, I(a) (2008); *see also* RSA 193-D:6 (2008) (setting forth a penalty for persons who knowingly fail to comply with reporting requirement for acts of theft, destruction, or violence). The state board of education is required to adopt rules relative to safe school zones under RSA chapter 541-A for, among other things, disciplinary proceedings and standards and procedures for suspension and expulsion of pupils, both of which must include "procedures assuring due process," RSA 193-D:2, I(a), (b). The Safe School Zone legislation specifically states, however: "Nothing in this chapter shall prohibit local school boards from adopting and implementing policies relative to pupil conduct and disciplinary procedures." RSA 193-D:2, II; *see also* RSA 194:3-d (requiring "[e]very school district which has computer systems or networks [to] adopt a policy which outlines the intended appropriate and acceptable use, as well as the inappropriate and illegal use, of the school district computer systems and networks including, but not limited to, the Internet").

The state board of education promulgated rules governing "Standards and Procedures for Suspension and Expulsion of Pupils including Procedures Assuring Due Process." N.H. ADMIN. RULES, Part Ed 317. The purpose of Part 317 includes "provid[ing] the minimum requirements to assure due process and statewide uniformity in the enforcement of RSA 193:13 and 193-D relative to disciplinary action of a pupil in a safe school zone" and providing a "standard that local school boards shall use in adopting and implementing a policy relative to pupil conduct and disciplinary procedures under RSA 193-D:2, II." N.H. ADMIN. RULES, Ed 317.01. The specific regulation at issue in this case, Rule 317.04, sets forth "Disciplinary Procedures" and provides in part:

(a) There shall be the following levels of discipline available to school officials enforcing RSA 193:13 relative to the suspension and expulsion of pupils in a safe school zone:

(1) A suspension for gross misconduct or for neglect or refusal to conform to the reasonable rules of the school under RSA 193:13, I shall be considered a short-term suspension and shall be administered by a superintendent or designee for a period not to exceed 10 school days;

(2) A suspension for an act of theft, destruction, or violence as defined in RSA 193-D, or for possession of a pellet paint ball gun or BB gun or rifle under RSA 193:13, II shall be considered a long-term suspension and shall be administered by the school board or designee in order to continue the short term suspension for a period in excess of 10 school days, provided the designee is not the person who suspended the pupil for 10 school days under (1) above, and that designee provides a due process hearing under (d)(2) below;

(3) An expulsion by the local school board for a period determined in writing by the board under RSA 193:13, II; and

(4) An expulsion by the local school board for a period of not less than 12 months under RSA 193:13, III.

The above rule appears to permit long-term suspension only for conduct that involves "an act of theft, destruction, or violence as defined in RSA [chapter] 193-D, or for possession of a pellet paint ball gun or BB gun or rifle under RSA 193:13, II." However, this rule is not consistent with the governing statutes. For instance, Rule 317.04(a)(1), regarding short-term suspensions, references RSA 193:13, I, and this statutory provision expressly authorizes local school boards to impose long-term suspensions. Specifically, the statute authorizes the school board, following a hearing, to "continue" a short-term suspension imposed for "gross misconduct or for neglect or refusal to conform to the reasonable rules of the school," to a long-term suspension "in excess of 10 school days." RSA 193:13, I(a), (b). Moreover, the legislature authorized local school boards to expel students, not only for acts of theft, destruction or violence as defined in RSA 193-D:1 or possession of, for example, a pellet gun, but also for "gross misconduct, or for neglect or refusal to conform to the reasonable rules of the school." RSA 193:13, II. Further, when requiring the state board of education to promulgate rules relative to safe school zones, the legislature preserved the

authority granted to local school boards to adopt and implement policies relative to pupil conduct and discipline procedures. *See* RSA 193-D:2, II.

■■ Insofar as Rule 317.04(a) purports to preclude local school boards from imposing long-term suspensions in excess of ten days for misconduct that does not involve "an act of theft, destruction, or violence as defined in RSA 193-D, or for possession of a pellet paint ball gun or BB gun or rifle under RSA 193:13, II," it directly conflicts with RSA 193:13, *which expressly authorizes* school boards to impose suspensions in excess of ten days, or even expulsion, for gross misconduct or for neglect or refusal to conform to the reasonable rules of the school. We recognize that Part 317 may well have been intended to provide regulatory direction for local school authorities to develop discipline policies and procedures, rather than to establish absolute standards. *See* N.H. ADMIN. RULES, Ed 317.01; *see also* RSA 21-N:1, II(a) (2000), :9, II(b) (2000); RSA 193-D:2; RSA 21-N:9, II(x). However, to the extent Rule 317.04(a) limits the statutorily prescribed authority granted to local school boards in the manner set forth above, we conclude that the regulation is invalid. *See Appeal of Anderson*, 147 N.H. at 183 (administrative rules may not "add to, detract from, or modify the statute which they are intended to implement"). Accordingly, we reject the petitioners' argument that the school board acted in excess of statutory authority and in violation of Rule 317.04 when it imposed a suspension in excess of ten school days for neglect or refusal to conform to reasonable rules of the school.

The petitioners next argue that Keelin B.'s suspension was improper because the Sunapee School Board failed to comply with its own policy that limits long-term suspensions to twenty school days. *Cf. Appeal of Union Tel. Co.*, 160 N.H. at 317 ("an administrative agency must follow its own rules and regulations, and . . . an agency's interpretation of its own regulations is erroneous as a matter of law when it fails to embrace the plain meaning of its regulations"). We agree.

The Sunapee School District established "rules relative to student conduct, discipline and due process" (district rules), purportedly adapted from Part 317. The stated purpose of the rules includes providing "due process and statewide uniformity in the enforcement of RSA [chapter] 193-D relative to . . . school safe zone[s] . . . and RSA 193:13 relative to suspension and expulsion," and implementing the authority of school boards reserved under RSA 193-D:2, II to "adopt policies relative to pupil conduct and disciplinary procedures."

The district rules provide "levels of discipline available to school officials enforcing RSA 193:13 and/or RSA 193-D relative to the suspension and expulsion of pupils," including short-term suspension "not to exceed 10

days," long-term suspension "between 11 and 20 days," and expulsion. They also specify procedural protections afforded to students for the different levels of discipline, and prescribe to some degree the nature of student misconduct that is subject to the varying levels of discipline. For example, the district rules define "suspension" to mean "the temporary denial of a student's attendance at school for a specific period of time for gross misconduct or for neglect or refusal to conform to announced, posted, or printed school rules," and also contain definitions for "gross misconduct," "neglect," and "refusal."

■ Respondent school district argues that its rules afford students the same disciplinary procedures as provided under Rule 317.04. Even assuming some procedures in the district rules and the regulations are the same, the former limit long-term suspensions to twenty days by their plain terms. Therefore, the school board exceeded the district rules when it imposed a suspension of thirty-four school days.

■ The school district contends, however, that interpreting the district rules to prohibit a long-term suspension in excess of twenty school days would be contrary to its statutory authority under RSA 193:13 and RSA 193-D:2, II, and would lead to absurd and unlawful results. We disagree. Unlike Rule 317.04(a), which can be viewed as an attempt by the state board of education to impose limits on local school boards' disciplinary authority in a manner that conflicts with RSA 193:13, nothing in that statute prohibits a local school board from circumscribing *its own* disciplinary authority more narrowly than the law allows. In other words, RSA 193:13 does not require a local school board to exercise the full measure of disciplinary authority granted to it by the legislature. Consequently, although the Sunapee School Board may well have the authority to create a policy or rule permitting long-term suspensions in excess of twenty days pursuant to RSA 193:13, I(b), it is bound by the terms of the rules in effect when the suspension at issue was imposed. *Cf. Appeal of Union Tel. Co.*, 160 N.H. at 317 (administrative agency must follow its own rules and regulations); *Doe v. N.H. Dep't of Safety*, 160 N.H. 474, 477 (2010) ("we will not permit an agency to add or delete requirements . . . through the mere expedient of interpreting a rule that is clear and unambiguous on its face" (brackets omitted)).

The school district also argues that the student handbook and other district policies provided notice to Keelin B. and her parents that the conduct at issue was prohibited and that possible sanctions included suspension and expulsion. It contends that school rules need not be as

detailed as a criminal code, and that notice of possible expulsion necessarily includes notice of long-term suspension in excess of twenty school days. We are not persuaded.

Although the district policies and the student handbook alerted Keelin B. and her parents that the conduct at issue was subject to discipline, and even may have given notice that expulsion was a possibility, the school board did not pursue the more severe discipline of expulsion and provide Keelin B. with the associated procedural safeguards. *See, e.g.*, N.H. ADMIN. RULES, Ed 317.03. That the school board might have sought expulsion does not authorize it to exceed the twenty-day limitation for long-term suspensions established under the district policy. Furthermore, we do not find applicable the cases cited by the school district upholding challenged student discipline when the governing school policy gave notice that the conduct was prohibited. *See Bethel School Dist. No. 403 v. Fraser*, 478 U.S. 675, 678, 686 (1986) (holding that school disciplinary rule proscribing conduct, as well as admonition by teacher, provided adequate notice to student that such conduct would subject him to sanctions, notwithstanding lack of specific penalty enunciated in school handbook); *Palmer v. Merluzzi*, 689 F. Supp. 400, 410-12 (D.N.J. 1988) (upholding additional school discipline of suspending student from extracurricular activities even though such sanction was not expressly set forth in student handbook), *aff'd*, 868 F.2d 90 (3d Cir. 1989). In neither case did the school district impose a suspension that exceeded a cap expressly enunciated in the school district policy. Accordingly, while we reject the petitioners' argument that Keelin B.'s suspension in excess of ten days was not authorized by law, we hold that the school board erred as a matter of law when it imposed a suspension of thirty-four school days. The suspension must be reduced to twenty school days in accordance with the district rules.

Next, the petitioners argue that suspension was not a permitted sanction in this case because the maximum punishment available under the "Acceptable Use Policy" in the student handbook is suspension from the school district's computer system for ninety days. We disagree.

The state board of education upheld the school board's finding that Keelin B. violated not only the Acceptable Use Policy, but also numerous other provisions in the student handbook, including prohibitions on harassment, bullying, and use of vulgar, profane, obscene or defamatory language. The student handbook gives notice that suspension is a possible sanction for such misconduct. Furthermore, under the handbook's "Behavior and Discipline" section, suspension is identified as a possible sanction for "[f]ailure to follow guidelines for computer use," which the school board also identified as an infraction in this case.

█ Finally, the petitioners argue that the Sunapee School District acted in excess of its statutory authority by imposing a suspension for electronic communications that were transmitted and received off school campus and not in a safe school zone. The school board found, however, that Keelin B. participated in sending the emails to the principal and the teacher at their school email addresses. The petitioners do not dispute this finding, and acknowledge that the emails were transmitted using the school district email system. Their claim that their daughter's conduct was beyond the reach of school authorities since her home computer was used to send the emails and the recipients used their home computers to access their school email accounts lacks merit. Whether or not Keelin B.'s improper use of the school email system, accessed remotely from home computers, falls within the ambit of a "safe school zone" under RSA 193-D:1, II, we have no doubt that this conduct falls squarely within the purview of RSA 193:13. *See also* RSA 194:3-d (a school district with computer systems or networks shall adopt a policy which outlines the appropriate and acceptable, and inappropriate and illegal use, of those systems and networks).

The remainder of the petitioners' arguments in their brief were not included in the notice of appeal. Therefore, they are deemed waived and we do not address them. *See Forsberg v. Kearsarge Reg'l Sch. Dist.*, 160 N.H. 264, 269 (2010); SUP. CT. R. 16(3)(b).

In sum, we affirm the state board of education's decision upholding the suspension of Keelin B., vacate that decision only insofar as the suspension exceeded twenty school days, and remand.

*Affirmed in part; vacated in part; remanded.*

DALIANIS, C.J., and DUGGAN, HICKS and CONBOY, JJ., concurred.