Dover Family Division
No. 2011-115

IN RE MICHAEL E. & a.

Submitted: July 13, 2011
Opinion Issued: September 22, 2011

*Michael A. Delaney*, attorney general (*Jeanne P. Herrick*, attorney, on the memorandum of law), for the petitioner, New Hampshire Division for Children, Youth and Families.

*Burns Legal Services*, of Portsmouth (*Christopher R. Burns* on the brief), for the respondent.

DALIANIS, C.J. The respondent, Debra D., appeals an order of the Dover Family Division (*Ashley*, J.) terminating her parental rights over her sons, Michael E. and Andre E., for failure to correct conditions leading to a finding of neglect. *See* RSA 170-C:5, III (2002). We affirm.

The record reveals the following facts. On April 3, 2009, the trial court granted an *ex parte* neglect petition filed by the petitioner, the New Hampshire Division for Children, Youth and Families (DCYF), seeking out-of-home placement for Michael E. and Andre E. On May 26, 2009,

following adjudicatory and dispositional hearings, the trial court issued a final dispositional order finding that the respondent had neglected Michael E. and Andre E. by selling drugs from her home and in their presence. *See* RSA 169-C:19 (Supp. 2010). DCYF was awarded legal custody of the children. The final dispositional order set forth conditions the respondent had to meet before the children could safely be returned to her. These conditions, which were intended to correct those that led to the finding of neglect, included: (1) refraining from drug and alcohol use; (2) attending individual counseling; (3) working cooperatively with a parent aide; and (4) undergoing a neurological evaluation. To help the respondent meet these requirements, the court also ordered DCYF to provide her with a parent aide and to implement drug screening, as well as to provide assistance in setting up the neurological evaluation and locating counseling services and parenting classes. The respondent did not appeal this order. For ease of reference, we will refer to the dispositional hearing and the final dispositional order as "the neglect case."

On August 25, 2009, the court held a three-month review hearing and found that the respondent was in partial compliance with its order. The respondent was also determined to be in partial compliance with the court's order at the six-month review hearing. At the respondent's nine-month review hearing on February 10, 2010, however, she was found not to be in compliance with the court's order because she missed visitation with her children, did not work cooperatively with the parent aide, did not undergo drug tests and admitted to using cocaine. At all review hearings, DCYF was ordered to continue to provide the respondent with case management and a parent aide and to assist her with accessing community services.

On May 26, 2010, twelve months after the final dispositional order was issued in the neglect case, the court held a permanency hearing and found that the respondent was not in compliance with its order. The court found that the respondent did not complete counseling or parenting classes and was noncompliant with the parent aide. The court also noted that the respondent's numerous incarcerations rendered her unable to have regularly scheduled visitation with her children or to maintain a safe and stable residence for them. Additionally, the court found that the respondent failed to remain free of drugs and alcohol, as she missed numerous drug screens and admitted to using cocaine and alcohol. Accordingly, the court ordered DCYF to file a termination of parental rights (TPR) petition.

DCYF then sought to terminate the respondent's parental rights alleging, among other things, that she failed to correct the conditions leading to a finding of neglect. After a hearing on the TPR petition, the trial court found that DCYF had proved, beyond a reasonable doubt, that the respondent failed to correct the conditions leading to the finding of neglect.

*See* RSA 170-C:5, III. The court also determined that it was in the best interest of the children to terminate the respondent's parental rights because "she has no current ability to care for her children and no track record to suggest she could properly care for them when released from jail." This appeal followed.

■ Before a court may order the termination of a parent's rights, the petitioning party must prove a statutory ground for termination beyond a reasonable doubt. *In re Jack L.*, 161 N.H. 611, 614 (2011). RSA 170-C:5, III provides for termination where "[t]he parents, subsequent to a finding of child neglect or abuse under RSA 169-C, have failed to correct the conditions leading to such a finding within 12 months of the finding despite reasonable efforts under the direction of the . . . court to rectify the conditions." *See* RSA 490-D:2, IV, VII (2010) (allowing family division to hear RSA chapter 169-C cases). Thus, in order to rely upon RSA 170-C:5, III as grounds for termination, DCYF must demonstrate: (1) a finding of child neglect or abuse under RSA chapter 169-C; (2) a failure to correct the same within twelve months of the finding; and (3) reasonable efforts under the direction of the court to rectify the conditions. *In re Zachary G.*, 159 N.H. 146, 153 (2009). We will not disturb the trial court's finding unless it is unsupported by the evidence or plainly erroneous as a matter of law. *Id.*

The respondent first argues that "the [t]rial court's conclusion that a finding of neglect should be entered against [the respondent] was not supported by the sufficiency of the evidence." The court incorporated, without objection, the record from the neglect case into the TPR proceedings. The court then issued a decision granting the TPR petition, in which it relied upon and recited the findings from the neglect case. The respondent moved for reconsideration, arguing that there was insufficient evidence to support a finding of neglect. Therefore, we understand the respondent's argument to be that the court in the TPR proceeding should not have relied upon the finding in the neglect case, but should have reviewed the evidence presented in the neglect case *de novo*, and in doing so, should have found that there was insufficient evidence to support a finding of neglect.

■ DCYF asserts that collateral estoppel bars the respondent from challenging the neglect case findings. We agree. Spurred by considerations of judicial economy and a policy of certainty and finality in our legal system, the doctrine of collateral estoppel has been established to avoid repetitive litigation so that at some point litigation over a particular controversy must come to an end. *Id.* at 151. Thus, the collateral estoppel doctrine bars a party to a prior action from relitigating any issue or fact actually litigated and determined in the prior action. *Id.* Three basic conditions must be

satisfied before collateral estoppel will arise: (1) the issue subject to estoppel must be identical in each action; (2) the first action must have resolved the issue finally on the merits; and (3) the party to be estopped must have appeared as a party in the first action. *Id.* The burden of proving estoppel is on the party asserting it. *Id.*

DCYF has satisfied its burden of demonstrating collateral estoppel. The respondent appeared as a party in the first action. The relevant issue, whether the respondent neglected her sons under RSA chapter 169-C, is germane to both the neglect case and the TPR case. *See id.* The court's finding of neglect was a "final dispositional order," RSA 169-C:28 (2002); *see In re Diane R.*, 146 N.H. 676, 678 (2001), and the respondent did not appeal that order to the superior court for *de novo* review, *see* RSA 169-C:28; therefore, the issue of neglect was resolved finally on the merits. Because DCYF has successfully demonstrated the three conditions for collateral estoppel and the respondent has not submitted any argument as to why we should relax this preclusive doctrine, *see In re Zachary G.*, 159 N.H. at 151-52, we conclude that collateral estoppel bars the respondent from challenging the neglect case findings in the TPR case.

The respondent next argues that there was insufficient evidence to support the trial court's conclusion that DCYF made reasonable efforts to reunify her with her children. Specifically, the respondent contends that because the "vast majority if not all of the services [she] utilized" were arranged by the respondent and not DCYF, DCYF failed to make reasonable efforts. DCYF cannot file a TPR petition if "[t]he state has not provided to the family of the child, consistent with RSA 170-C:5, III, such services and reasonable efforts as the state deems necessary for the safe return of the child to the child's home." RSA 169-C:24-a, III(c) (2002). RSA 170-C:5, III provides that a petition for termination of parental rights may be granted where the parents have failed to correct the conditions leading to the finding of neglect "within 12 months of the finding despite reasonable efforts under the direction of the . . . court to rectify the conditions."

In assessing the State's efforts, the court must consider whether the services provided have been accessible, available and appropriate. *In re Juvenile 2006-833*, 156 N.H. 482, 486 (2007); RSA 169-C:24-a, III(c). However, we have recognized that the State's ability to provide adequate services is constrained by its staff and financial limitations. *In re Juvenile 2006-833*, 156 N.H. at 486. "Thus, the State must put forth reasonable efforts given its available staff and financial resources to maintain the legal bond between parent and child." *Id.* (quotation omitted). "The word

reasonable is the linchpin on which the department's efforts in a particular set of circumstances are to be adjudged." *Id.* (quotation and ellipsis omitted).

■ We conclude that the record supports the trial court's finding that DCYF made "reasonable efforts" under RSA 169-C:24-a, III(c) and RSA 170-C:5, III. The trial court found that DCYF "developed a well-reasoned case plan" and "provided case management, parent aide support, suggestions for counseling and parenting classes, and drug screening." The record supports these findings.

■ The respondent argues that DCYF did not make reasonable efforts because the caseworker did not enroll her in any of the services she obtained. This, however, is not required. The State's role is to "[p]rovide assistance to parents to deal with and correct problems." RSA 169-C:2, I(c) (2002); *see In re Juvenile 2006-833*, 156 N.H. at 487. "Its role is not to assume the full weight of the parents' responsibilities." *In re Juvenile 2006-833*, 156 N.H. at 487. A parent must "make her own effort in conjunction with the efforts made by DCYF." *Id.* Here, the caseworker obtained information about the services available in the respondent's community and provided that information to her. The caseworker also informed the respondent of the services available to her while she was incarcerated. Taking into consideration DCYF's limitations, regarding both its staff and finances, the efforts made by DCYF to help the respondent obtain necessary services were reasonable. *See id.*

To the extent that the respondent argues there was insufficient evidence to prove, beyond a reasonable doubt, that her parental rights should be terminated, we disagree. *See* RSA 170-C:5, III. As we have already determined that there was sufficient evidence to prove that there was a finding of neglect entered against the respondent and that reasonable efforts were made by DCYF to assist her, we now consider only whether there was sufficient evidence to prove that she failed to correct the conditions which led to the finding of neglect. *See id.*

■ The trial court found that although she was given thirteen months to correct the conditions that led to the original neglect finding, the respondent "never acknowledged that there were any neglectful conditions to be corrected." The court found that the respondent "was largely uncooperative with the parent aides assigned to assist her to reunify with her boys" and "did not comply with the orders for drug screens." Additionally, she "failed to establish that she can refrain from illegal drug use when she is not incarcerated." As the record supports these findings, we uphold them. We conclude that, based upon these findings, the trial court reasonably

determined that the respondent failed to correct the conditions leading to the neglect finding. Thus, we conclude that there was sufficient evidence to prove, beyond a reasonable doubt, that the respondent's parental rights should be terminated.

*Affirmed.*

DUGGAN, HICKS, CONBOY and LYNN, JJ., concurred.