Concord Family Division
No. 2011-123

## IN RE HALEY K.

Submitted: November 16, 2011
Opinion Issued: January 27, 2012

*Michael A. Delaney*, attorney general (*Suzanne M. Gorman*, senior assistant attorney general, on the memorandum of law), for the petitioner, New Hampshire Division for Children, Youth and Families.

*Lucinda Hopkins*, of Manchester, by brief, for the respondent.

CONBOY, J. The respondent, the father of Haley K., appeals an order of the Concord Family Division (*Tenney*, J.) terminating his parental rights. He argues that the trial court erred in finding that the State made reasonable efforts to assist him in correcting the conditions of neglect. We affirm.

The following facts are undisputed. Haley was born in August 2007. In May 2009, she was living with the respondent and his mother when he was arrested and incarcerated for theft. After the respondent was incarcerated, his mother concluded that she was unable to care for Haley and returned her to a foster family with whom she had previously resided. In June 2009, the New Hampshire Division for Children, Youth and Families (DCYF) filed a neglect petition alleging that Haley was a neglected child as defined in RSA 169-C:3, XIX(b) and (c) (2002). An adjudicatory hearing was scheduled for June 29, 2009, at which time a consent order was entered in which the respondent and Haley's mother agreed that she was a neglected child. In July 2010, DCYF filed petitions to terminate both parents' parental rights pursuant to RSA 170-C:5; the petition alleged that the respondent had failed "to correct conditions of neglect or abuse under RSA 169-C." At the hearing on the petition, Haley's mother surrendered her parental rights.

After the two-day termination hearing, the trial court found beyond a reasonable doubt that the respondent had failed to correct, within twelve months, the conditions that led to the finding of neglect despite reasonable efforts by DCYF to assist him in rectifying the conditions. *See* RSA 170-C:5, II (2002). The trial court found that the original neglect petition alleged that the respondent failed to provide proper parental care or control necessary for Haley's physical and emotional health because, upon his incarceration, he left Haley in the care of his mother "who was unwilling/unable to provide care for [her] and that Haley was very likely to suffer serious harm." At the time of the respondent's incarceration in May 2009, Haley was twenty-one months old and had had numerous caregivers, including the respondent in the early stages of her life; this lack of stability led to social and emotional behavioral issues. Haley was three years and

four months old at the time of the hearing on the termination petition and had remained in foster care since the respondent's incarceration.

On appeal, the respondent argues that the trial court erred in ordering termination of his parental rights because the State failed to provide reasonable services for his reunification with Haley.

Before a court may order the termination of a parent's rights, the petitioning party must prove a statutory ground for termination beyond a reasonable doubt. *In re Juvenile 2006-674*, 156 N.H. 1, 4 (2007); *see* RSA 170-C:5, III; *In re Craig T.*, 147 N.H. 739, 743-45 (2002) (parental rights may be terminated when parent fails to correct conditions leading to neglect finding within twelve months of the finding despite reasonable efforts by State under direction of district court to assist in rectifying conditions); RSA 490-D:2, VII (2010) (authorizing family division to exercise jurisdiction over termination of parental rights cases under RSA chapter 170-C). We will affirm the trial court's order unless it is unsupported by the evidence or erroneous as a matter of law. *In re Juvenile 2006-674*, 156 N.H. at 4.

RSA 169-C:24-a, I (Supp. 2010) requires that a petition for termination of parental rights be filed in those cases in which a child has been in an out-of-home placement pursuant to a finding of neglect, under the responsibility of the State, for twelve of the most recent twenty-two months. This requirement may not apply in cases in which the child is being appropriately cared for by a relative, *see* RSA 169-C:24-a, III(a), or when the State has not provided to the family of the child "such services and reasonable efforts as the [S]tate deems necessary for the safe return of the child to the child's home." RSA 169-C:24-a, III(c); *cf. In re Juvenile 2006-674*, 156 N.H. at 9 (Dalianis, J., concurring) (under Federal Adoption and Safe Families Act of 1997, federal government has mandated that a child deserves permanency; therefore, if parents do not show that they are able to provide adequate care of their child within one year of entry into foster care, termination of parental rights and adoption or permanent foster care must be pursued).

In this case, DCYF sought termination under RSA 170-C:5, III, which authorizes termination when parents have failed to correct, within twelve months, the conditions leading to a finding of neglect despite reasonable efforts under the direction of the district court to rectify the conditions. RSA 170-C:5, VI (2002) also authorizes termination of parental rights when a parent, as a result of incarceration for a felony offense, is unable to discharge his responsibilities to and for the child and has been found to have abused or neglected his child. This statute further provides that placement in foster care "shall not be considered proper parental care and

protection for purposes of this paragraph," and that "[i]ncarceration *in and of itself* shall not be grounds for termination of parental rights." RSA 170-C:5, VI (emphasis added).

In support of his assertion that the trial court erred in finding that he failed to correct the conditions that led to a finding that Haley was a neglected child, the respondent argues that DCYF had an obligation to provide reasonable services that he could access while incarcerated. Although he concedes that his "length of incarceration may very well have proved available as grounds to terminate his rights" and "[i]ncarceration was [his] doing," he appears to argue that the effect of his incarceration on the welfare of his child was not a factor that the trial court could consider when determining whether termination of his parental rights should be ordered for failure to correct neglect conditions.

To address his argument requires that we engage in statutory analysis; our review of the applicable statutes is *de novo, Appeal of Keelin B.*, 162 N.H. 38, 42 (2011). When construing statutes, we first examine the language used, and, where possible, we ascribe the plain and ordinary meanings to words used. *Id.* We can neither ignore the plain language of the legislation nor add words that the legislature did not include. *Id.*

As the State observes, under RSA chapter 169-C, the definition of a neglected child includes one who "is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for [her] physical, mental, or emotional health, when it is established that [her] health has suffered or is very likely to suffer serious impairment; and the deprivation is not due primarily to the lack of financial means of the parents," RSA 169-C:3, XIX(b). The statute also defines a neglected child as one whose parents "are unable to discharge their responsibilities to and for the child because of incarceration." RSA 169-C:3, XIX(c).

In essence, the respondent argues that special accommodations for his incarceration should have been made in the remedial plan developed to assist him in correcting the conditions that led to a finding of neglect, but that his actual incarceration should not have been considered in determining whether the conditions of neglect remained uncorrected. Absent specific legislative direction, we decline to adopt such an interpretation of the statute.

RSA 170-C:5 provides alternative grounds under which termination may be sought; it does not limit a petitioner's discretion in determining under which provision to proceed. Nor does it limit the evidence that can be presented depending upon the provision chosen. Accordingly, we conclude

that factors that may be directly relevant to one ground for termination may also be relevant in cases that seek termination based upon an alternative ground.

█ We therefore turn to the specific facts of this case to determine whether DCYF provided reasonable services to assist the respondent in correcting the neglect conditions. We have previously held that the State's ability to provide reasonable services is constrained by its staff and financial limitations. *In re Juvenile 2006-833*, 156 N.H. 482, 486 (2007). We have emphasized that the word "reasonable" is the standard under which the department's efforts in a particular case are to be assessed. *Id.*

The dispositional orders issued in the underlying neglect case required that the respondent: (1) demonstrate that he is free from illegal/illicit substances as evidenced by random drug screens and attendance at AA/NA meetings; (2) manage his addictions as evidenced by reports from his individual therapist; (3) demonstrate his ability to appropriately parent Haley as reported by the assigned parent aide; (4) demonstrate an ability to care for himself financially as evidenced by maintaining employment and an apartment; and (5) refrain from illegal activity and comply with parole terms.

The dispositional order required DCYF to provide: (1) a parent aide; (2) random drug screens; (3) referrals for counseling by a licensed drug and alcohol abuse counselor (LADAC) and individual therapy; (4) home based support; and (5) a child protective services worker (CPSW) for case management and coordination of services including visitation at the prison.

The trial court found that: (1) DCYF provided a parent aide who reported that the respondent visited consistently and acted appropriately with Haley during visits at the prison; (2) random drug screens could not be provided by DCYF due to prison policy; (3) DCYF and the respondent attempted to arrange sessions with a private LADAC counselor, but prison policy did not allow outside therapists; and (4) DCYF provided a CPSW for case management who communicated with the respondent, though with great difficulty due to prison administrative rules.

█ There is some dispute between the parties concerning the level of the respondent's compliance with the dispositional orders. As we have previously observed, however, compliance or noncompliance with orders issued in the neglect case is not dispositive; rather, it is but one factor the trial court may consider in addressing the broader issue of whether the conditions leading to the original finding of neglect had been corrected. *See, e.g., In re Tricia H.*, 126 N.H. 418, 423 (1985). At the end of twelve months, the respondent remained incarcerated, and Haley remained in foster care because there was no other option for her placement.

■ While the respondent argues that DCYF did not provide reasonable services to assist him in rectifying the conditions leading to a finding of neglect, *see* RSA 169-C:3, XIX (2002) (defining neglected child), he does not identify the services that might have been provided to correct this condition. As he concedes, "[i]ncarceration was [his] doing." And it is his incarceration that contributed to Haley's continuing to be without proper parental care or control. *Cf., e.g., In re Adam M.*, 148 N.H. 83, 85 (2002) (parental responsibilities include provision for child's physical needs, including food, clothing, medical care and a domicile).

Nevertheless, it is not his incarceration alone that was dispositive of the court's finding. Rather, he failed to make adequate provisions for his child's care and support during his incarceration. Much like a military parent who is deployed overseas, the respondent's physical unavailability did not absolve him of his parental obligation to provide for the care of his child. Accordingly, we affirm the decision of the trial court.

*Affirmed.*

DALIANIS, C.J., and HICKS and LYNN, JJ., concurred.