NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by email at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

9th Circuit Court-Manchester Family Division
Case No. 2023-0523
Citation: In re C.M., 2024 N.H. 45


IN RE C.M.; IN RE D.M.; IN RE S.M.

Submitted: June 25, 2024
Opinion Issued: August 29, 2024


John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Laura E. B. Lombardi, senior assistant attorney general, on the brief), for the New Hampshire Division for Children, Youth and Families.

Law Office of Randall Carmel, P.C., of Harrisville (Randall Carmel on the brief), for the respondent.


PER CURIAM.

[¶1] The respondent, the mother of C.M., D.M., and S.M. (the children), appeals a final order of the Circuit Court (Joseph, J.), issued following a hearing, that terminated her parental rights over the children for failing to correct within twelve months conditions that led to findings of child neglect. See RSA 170-C:5, III (2022).  The respondent argues that: (1) she was denied effective assistance of counsel; (2) the petitioner, the New Hampshire Division

for Children, Youth and Families (DCYF), did not make reasonable efforts to reunify her with the children; and (3) termination of her parental rights was not in the best interests of the children. We affirm.

[¶2] The record reveals that on the day of the hearing on the petition to terminate her parental rights, the respondent, who was incarcerated, refused transportation to the hearing and did not attend. Her attorney advised the court that the respondent called her office earlier that day and told the attorney's assistant that she was sick. The assistant advised the respondent that, unless she was very sick, she should accept the transport. The respondent's counsel further advised the court that counsel was prepared to go forward with the hearing, explaining that she met with the respondent recently and that counsel had not been planning to call the respondent or any other witnesses to testify. The court informed the parties that it intended to go forward, stating, "The information that I have is that she simply refused transport. I wasn't made aware of any illness."

[¶3] Following the hearing, the trial court issued an order granting DCYF's petition; the order includes the following findings of fact. DCYF filed neglect petitions in January 2022 against the respondent citing her pervasive substance misuse. At the time the petitions were filed, the respondent had been detained on theft charges and "her release was unclear." Following an adjudicatory hearing, the respondent was found to have neglected her children. After a dispositional hearing, she was ordered to: (1) attend and meaningfully participate in substance misuse treatment; (2) refrain from using illicit substances and participate in DCYF's drug testing; (3) participate in visits and parenting education; (4) obtain and maintain a safe and appropriate residence; and (5) follow the terms of any supervised release. In May 2022, the respondent was released from jail and began to attend counseling sessions with a DCYF master's level licensed alcohol and drug counselor. However, she missed 6 of 7 appointments with the counselor in July and failed to attend any of the six random drug tests scheduled by DCYF.

[¶4] The respondent's initial, in-person visits with the children went well. However, after her bail was revoked and she was returned to jail, it was determined that, given the young ages of the children (5, 3 and almost 2), visits limited to "through the glass" would not be in the children's best interests. The caseworker offered to deliver any letters that respondent might want to write to the children; the case worker did not receive any letters from her.

[¶5] Based on these findings, the trial court ruled that DCYF had established beyond a reasonable doubt that the respondent had failed to correct the conditions that led to findings of neglect within twelve months despite reasonable efforts under the direction of the court to correct the conditions and that it was in the best interests of the children to terminate the respondent's parental rights. This appeal followed.

[¶6] We will not disturb the trial court's findings unless they are unsupported by the evidence or are plainly erroneous as a matter of law. In re S.A., 174 N.H. 298, 300 (2021). When reviewing its findings, we are mindful that the trial court "is in the best position to assess and weigh the evidence before it, and that our task is not to determine whether we would have found differently, but whether a reasonable person could have found as the trial judge did." Id. (quotations, brackets and ellipsis omitted).

[¶7] We first address the respondent's argument that she was denied effective assistance of counsel.[1] RSA 170-C:10 (2022) provides that after a petition to terminate a parent's rights has been filed, the court shall notify the parent of "his or her right to counsel, and if counsel is requested and the parent financially unable to employ counsel, counsel shall be provided by the court." We have not yet addressed whether a statutory right to counsel gives rise to a separate right to effective assistance of counsel or the right to collaterally attack an order terminating parental rights. Relying upon cases in which we have addressed the constitutional right to counsel in criminal cases, the respondent opines that, if we were to recognize a right to effective assistance of counsel in termination of parental rights cases and apply the same standard of review, she would be required to establish both that her counsel's performance was constitutionally deficient and that counsel's deficient performance prejudiced the outcome of the case. See, e.g., State v. Collins, 166 N.H. 210, 212 (2014). To establish prejudice when asserting an ineffectiveness claim in the criminal conviction context, a defendant must establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 213. The respondent requests that we "not require [her] to show actual prejudice since terminating a parent's legal bond to a child is an irreversible event of constitutional import" and asserts that her statutory right to counsel "was rendered meaningless by [her counsel] proceeding to a final hearing in her absence." (Quotation omitted.)

[¶8] Although our legislature has established a statutory right to appointed counsel in termination of parental rights cases, it has not addressed whether this right may give rise to a separate claim challenging the performance of appointed counsel. We do not decide today whether such a claim may be cognizable. We recognize that the statutory requirement that counsel be provided would be rendered meaningless in some cases if such counsel were not held to an objective standard of reasonableness during representation. However, we are also keenly aware that in child protection proceedings the best interest of the child takes precedence over the interest of the parent. See RSA 169-C:2, I (2022); In re G.B., 167 N.H. 99, 106 (2014) (reiterating our well-settled law that dominant consideration in termination of

---

[1] The respondent's counsel at the hearing before the trial court on DCYF's petition is not the same as the counsel who now represents her on appeal.

parental rights proceedings is welfare of the child which prevails over interest of parent). If the right to bring an ineffectiveness claim is to be recognized, the procedure to be followed requires a balancing of these interests, including a child's need for permanency. As DCYF observes, the procedure for asserting such a claim, including its timing, and the applicable review standard must be established. See, e.g., Susan Calkins, Ineffective Assistance of Counsel in Parental-Rights Termination Cases: The Challenge for Appellate Courts, 6 J. App. Prac. & Process 179 (2004). The respondent does not address these issues but requests only that the prejudice required to be shown when such a claim is brought in the context of a criminal proceeding be waived in this case. We decline this request.

[¶9] For the purposes of this appeal, however, we will assume, without deciding, that the statutory right to counsel provided in RSA 170-C:10 creates an independent right to challenge a final ruling on the grounds of ineffectiveness of representation, and that the standard articulated in Collins that applies to criminal cases would apply in a termination of parental rights case. Accordingly, we must determine whether the respondent has established "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. Having reviewed the record before us, we conclude that the respondent has failed to meet this standard.

[¶10] The respondent also argues that DCYF did not make reasonable efforts to reunify her with the children. Before the trial court may terminate a parent's rights, DCYF, as petitioner, must prove a statutory ground for terminating parental rights beyond a reasonable doubt. In re S.A., 174 N.H. at 299-300; RSA 170-C:10. One such ground is the parent's failure, subsequent to a finding of neglect under RSA chapter 169-C, to correct the conditions leading to the finding within twelve months despite reasonable efforts under the direction of the circuit court to rectify the conditions. See RSA 170-C:5, III. Whether a parent has complied with dispositional orders in a neglect case is a non-dispositive factor that the trial court may consider in determining whether the parent has corrected the conditions of neglect. In re Haley K., 163 N.H. 247, 251 (2012).

[¶11] DCYF's role in neglect cases is not to assume the full weight of a parent's responsibilities, but rather to provide the parent with assistance to address the conditions that led to the finding of neglect. See In re S.A., 174 N.H. at 300. Given the services that were made available to the respondent, and her failure to avail herself of them, we affirm the trial court's order that DCYF's efforts were reasonable. See, e.g., In re Michael E., 162 N.H. 520, 525 (2011) (explaining that DCYF's role is to provide assistance to parents to deal with and correct problems rather than to assume full weight of parental responsibilities); In re Juvenile 2006-833, 156 N.H 482, 487 (2007) (making

4

"reasonable efforts" requires DCYF to do everything reasonable, not everything possible).

[¶12] The respondent's final argument is that the trial court erred in finding that termination of her parental rights was in the children's best interests. After the trial court has found a statutory ground for terminating a parent's rights, it must consider whether terminating the parent's rights, or some alternative dispositional order, is in the child's best interest. In re Zachary G., 159 N.H. 146, 157 (2009). Unlike the statutory ground for termination, this element does not require proof beyond a reasonable doubt. See In re Shannon M., 146 N.H. 22, 27-28 (2001). The dominant consideration is the welfare of the child, which prevails over the interests of the parent. In re Zachary G., 159 N.H. at 157.

[¶13] In this case, the trial court concluded that terminating the respondent's parental rights was in the children's best interests. The trial court found that the respondent was never in full or substantial compliance with the case plan during any of the trial court's regular review hearings held in the neglect case. At the time of the permanency hearing, the respondent had "no length of sobriety outside of incarceration." Included in the record before the trial court was a probable cause arrest warrant relative to the father of the children in which the respondent admitted to her complicity in the murder of the children's half-sister which the two oldest children witnessed. The court-appointed special advocate reported her interactions with the children and opined that they "will need ongoing extensive therapy and trauma treatment in order to ensure proper processing of the traumatic event they had experienced." In addition, at the time of the hearing on the termination petition, the children were transitioning into a foster placement with an individual known to them and with whom they enjoyed spending time; the individual was interested in adoption if that option were to become available.

[¶14] Based upon our review of the record, we conclude that the trial court's finding that terminating the respondent's parental rights was in the children's best interests was supported by the evidence and was not plainly erroneous as a matter of law. See In re Zachary G., 159 N.H. at 157.

Affirmed.

MACDONALD, C.J., and BASSETT, DONOVAN, and COUNTWAY, JJ., concurred.

5