Family Division at Salem
No. 2004-738

## In the Matter of Jeffrey G. and Janette P.

Argued: September 29, 2005
Opinion Issued: January 27, 2006

*Jeffrey G.*, by brief and orally, *pro se.*

*Janette P.*, by brief, *pro se.*

*Lisa S.*, by brief, *pro se.*

*Mary Pilkington-Casey*, of Concord, by brief, for the Franklin Pierce Administrative Law and Advocacy Clinic, as *amicus curiae.*

Galway, J. The petitioner, Jeffrey G., appeals the Trial Court's (*DiMeo*, J.) order granting primary physical custody of two minor children to Lisa S., the children's paternal aunt, arguing that it violated his constitutional right to make decisions concerning the care, custody, and control of his children. We reverse and remand.

The record supports the following facts. Jeffrey G. and Janette P. are the parents of J.G., born in 1996, and L.G., born in 1997. They were granted a divorce on August 7, 2002, after a three-day contested hearing in the Family Division at Salem. Both Jeffrey G. and Janette P. were represented by counsel, and a Guardian Ad Litem (GAL) represented the

.

children's interests. The issue of the children's custody has been intensely disputed since the parents' initial separation in 1998.

Throughout the pendency of the couple's divorce and post-divorce proceedings, three different GALs have represented the children's interests. Prior to the final divorce decree, Jeffrey G. had primary physical custody of the children from approximately October 1999 through August 2002. Prior to the final divorce hearing, the GAL filed a report documenting the parents' turbulent history together, much of which arose from and/or affected custody arrangements pertaining to the children. In the final divorce decree, the Trial Court (*Taube,* J.) awarded Janette P. sole legal custody and primary physical custody of the two children, while granting Jeffrey G. "reasonable physical custodial rights," including liberal visitation as detailed in the decree.

The parents' acrimonious and volatile relationship continued to deteriorate and reportedly had a negative impact on all parties, including the children. Both parents filed multiple motions and petitions with the trial court, which were addressed in a subsequent custody modification hearing conducted in June 2004. Prior to that hearing, the third GAL filed a written report, dated March 11, 2004, which, among other things, revealed that: (1) both parents had violated conditions and provisions contained in the divorce decree; (2) during 2003, both parents were involved in four assessments by child reporting agencies in Massachusetts and New Hampshire, one of which resulted in a finding of neglect against Janette P.; and (3) the children received inconsistent counseling and their behavioral, health and educational needs were affected by the lack of cooperation and hostility between their parents. Despite her conclusion that the children were being harmed by the parents' behavior, the GAL recommended that they share joint legal custody and that Janette P. retain physical custody of the children.

In June 2004, the court conducted a modification of custody hearing. Over two days, the trial court heard evidence, including testimony from the children's therapist and the GAL. After the completion of the first two days of testimony, but prior to the conclusion of the hearing, the court issued an order, acknowledging its "grave concerns about the emotional, physical and mental health of the children," and ordering the GAL to investigate the parents' relatives for potential placement of the children. On July 30, 2004, when the parties reconvened to continue the custody modification hearing, the GAL recommended that the children reside with their paternal aunt, Lisa S., in Maine.

Jeffrey G. asserts that the hearing was never completed and that both he and Janette P. were denied the opportunity to complete their testimony and fully present evidence pertaining to their case. Nevertheless, it is

undisputed that, in light of the GAL's recommendation, the parents reached another consent agreement, which the trial court approved, whereby the parents shared joint legal custody and Jeffrey G. assumed primary physical custody of the children.

On October 1, 2004, the GAL filed an "Interim Case Update" with the court "to document the failure of co-parenting and communication between Janette and Jeffrey." In addition to detailing several incidents of concern to the GAL, the report concluded, "[t]he children deserve better than their parents are willing and able to provide at this time," and recommended that the children be placed with Lisa S. "for the school year." The court conducted a review hearing on October 8, 2004, at which the GAL reported that both parents' circumstances had changed since the July 30, 2004 stipulation, resulting in their noncompliance with the terms of that agreement. The GAL also described a proposed custodial change, to which the parents agreed, granting Janette P. primary physical custody of the children. However, recognizing that the proposed change would be the fourth custodial change in four years, the trial court determined that "[t]he children will reside with their aunt in [Maine], end of discussion." The court further stated:

> You can come back in a year after the parents have been through co-Parenting classes, after [J.G.] has received the appropriate special education services he's to receive. Parents can pay. This is outrageous what the two of you are doing to your children. We have done this before and before, and again and again and again and again. That will be my order. This hearing's over. Thank you.

After denying Jeffrey G.'s counsel's repeated requests to be heard, the court further stated:

> I've heard this case. I've heard it every two weeks for the last two months. I'm not going to hear it again. These children are in grave danger remaining with their parents. We've already heard testimony from the therapist how damaged they are as a result of their parents [*sic*] behavior. I will not allow it to continue. The hearing is over.

The hearing lasted seventeen minutes. The court denied both counsels' requests to reconsider.

On October 13, 2004, prior to the proposed custodial change, the trial court granted the GAL's *ex parte* request that the two children be placed in Lisa S.' immediate custody. By order dated October 15, 2004, the court found that "[r]esiding with either parent is detrimental to these children,"

and granted physical custody to Lisa S. and supervised visitation to both parents.

The petitioner appeals the trial court's custody determination, arguing that the trial court: (1) did not have jurisdiction to grant custody of the children to Lisa S. under RSA 458:17; and (2) violated his fundamental procedural due process rights when it denied him custody of the children without following the requisite procedures set forth in RSA chapter 169-C.

Lisa S. urges us to uphold the trial court's custody determination, arguing that the trial court properly considered the best interests of the children when it: (1) found that the children were in danger if left in the care of their parents; and (2) required continuing protection for the children by limiting the parents to supervised visits.

We also permitted the filing of an *amicus curiae* brief, which argues that the trial court properly considered the best interests of the children when it found that the parents were unfit and granted physical custody to Lisa S. It contends the trial court's custody determination comports with precedent set in *Troxel v. Granville*, 530 U.S. 57 (2000) (plurality opinion).

The right of biological and adoptive parents to raise and care for their children is a fundamental liberty interest protected by Part I, Article 2 of the New Hampshire Constitution. *In the Matter of Nelson & Horsley*, 149 N.H. 545, 547 (2003). Similarly, the Due Process Clause of the Fourteenth Amendment to the United States Constitution protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children. *Troxel*, 530 U.S. at 66. This fundamental right is not absolute, but is subordinate to the State's competing *parens patriae* power to intervene if a child's welfare is at stake. *Preston v. Mercieri*, 133 N.H. 36, 40 (1990). We first address this issue under the State Constitution and cite federal opinions for guidance only. *State v. Ball*, 124 N.H. 226, 231-33 (1983).

The superior court's jurisdiction to award custody is purely statutory, and the best interests of the child guide all custody decisions in New Hampshire. *Bodwell v. Brooks*, 141 N.H. 508, 512 (1996). RSA 458:17 vests the superior court with authority to make child custody determinations in the case of divorce or annulment. RSA 458:17, I (2004). Thus, in the context of a divorce, the superior court "may interfere with parental rights to determine a child's best interests *as between two fit parents*." *Nelson*, 149 N.H. at 548 (emphasis added); *see Troxel*, 530 U.S. at 58 (recognizing a presumption that a fit parent is acting in the best interests of the child). RSA 458:17, VI identifies only two classes of third parties, grandparents and stepparents, who may be awarded custody "if the court determines that such an award is in the best interests of the

child." *See In the Matter of R.A. & J.M.*, 153 N.H. 82, 97 (2005) (Broderick, C.J.) (construing RSA 458:17, VI as authorizing superior court to grant custody to stepparent or grandparent in appropriate circumstances). We have narrowly interpreted RSA 458:17, VI to protect the fundamental liberty interests of biological and adoptive parents while balancing the State's interest in protecting the welfare of children within its jurisdiction. *See id.* at 101. Therefore, in the context of a custody determination, unless a third party is either a grandparent or stepparent who has established *in loco parentis* status, he or she may not obtain custody of the child over a biological or adoptive parent. *See id.*; RSA 458:17, VI.

▇ The fundamental liberty interest of biological and adoptive parents in the care, custody and management of their children "does not evaporate simply because they have not been model parents." *In re Bill F.*, 145 N.H. 267, 275 (2000). "Absent a showing of specific harm to the children, growing up in a so-called disadvantaged home is not a sufficient basis for coercive intervention." *Id.* (quotations and citation omitted). Therefore, even though their parenting skills are less than ideal, biological and adoptive parents are presumed to be fit parents, *see Troxel*, 530 U.S. at 58, until they are found to be unfit under either RSA chapter 169-C (abuse and neglect proceedings) or RSA chapter 170-C (termination of parental rights).

▇ The Child Protection Act, RSA chapter 169-C, governs custody determinations in child abuse and neglect proceedings and enumerates detailed procedures to be followed when any interested party asserts that a child has been abused or neglected. Under this statute, the welfare of an allegedly abused or neglected child is of paramount importance. *See In re Preisendorfer*, 143 N.H. 50, 54 (1998). However, in addition to "provid[ing] protection to children whose life, health or welfare is endangered," the purpose of this chapter is also "to establish a judicial framework to protect the rights of *all* parties involved in the adjudication of child abuse or neglect cases." RSA 169-C:2, I (2002) (emphasis added). Thus, when appropriate, and pursuant to enumerated procedures in the statute, RSA chapter 169-C provides for emergency interim relief, *see* RSA 169-C:6-a, as well as temporary placement with relatives or other appropriate third parties. *See* RSA 169-C:19, I & III.

▇ The instant case initially arose in the context of a divorce proceeding between two parents who had not been found unfit and, therefore, the trial court had jurisdiction to determine custody of the children pursuant to RSA 458:17. However, Lisa S. is not a potential custodial recipient named

in RSA 458:17, VI, and, therefore, the court did not have authority to grant custody to her in this context.

Because the State Constitution is at least as protective of individual liberties in these circumstances as the Federal Constitution, *see In re Tracy M.*, 137 N.H. 119, 122 (1993), we reach the same result under the Federal Constitution.

Accordingly, we reverse the trial court's custody determination and remand this case to the trial court for further proceedings consistent with this opinion.

*Reversed and remanded.*

BRODERICK, C.J., concurred; DALIANIS and DUGGAN, JJ., concurred in part and dissented in part.

DALIANIS and DUGGAN, JJ., concurring in part and dissenting in part. Though we concur in the result, we disagree with the majority's holding that:

> Therefore, in the context of a custody determination, unless a third party is either a grandparent or stepparent who has established *in loco parentis* status, he or she may not obtain custody of the child over a biological or adoptive parent.

As we made clear in our dissent to *In the Matter of R.A. & J.M.*, 153 N.H. 82 (2005), we believe that *no* relative or other third party can obtain custody of a child over fit biological or adoptive parents. *See id.* at 115 (Dalianis and Duggan, JJ., dissenting). Thus, we concur as to the result, but respectfully dissent as to the majority's reasoning concerning grandparents or stepparents.