NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

9th Circuit Court-Nashua Family Division
No. 2017-0626

IN RE O.D.;

IN RE B.D.;

IN RE G.D.

Argued: June 27, 2018
Opinion Issued: October 23, 2018

Gordon J. MacDonald, attorney general (Thomas Broderick, assistant attorney general, on the brief and orally), for New Hampshire Division for Children, Youth and Families.

Law Office of Kathy Ann Cellamare, of Nashua (Kathy Ann Cellamare on the brief and orally), for Mother.

Law Office of Dawn E. Worsley, of Nashua (Dawn E. Worsley on the brief and orally), for Father.

HANTZ MARCONI, J. The parents of O.D., B.D., and G.D. appeal an order of the Circuit Court (Quigley, J.) terminating their parental rights over their children, on the ground that they failed to correct the conditions leading

to a finding of neglect.  See RSA 170-C:5, III (2014).  They argue that the circuit court violated their due process rights by terminating their parental rights without requiring the New Hampshire Division for Children, Youth and Families (DCYF) to file new abuse or neglect petitions against them after the court issued an ex parte order removing the children from their home during ongoing neglect proceedings and by failing to appoint counsel for them during the neglect proceedings.  We affirm.

I

The record supports the following facts.  Mother and Father are the biological parents of the three children.  Prior to January 2015, the children were living with their grandmother, who was their legal guardian.  After receiving reports that the grandmother was homeless and that she had been arrested for shoplifting while in the company of one of the children, DCYF obtained an ex parte order in January 2015 removing the children from her custody and care.  The children were placed in an out-of-home placement.  Thereafter, DCYF filed three neglect petitions alleging that the grandmother neglected each of the children.  See RSA 169-C:7 (2014).  The affidavit of the child protective service worker attached to the petitions alleged that the grandmother neglected the children due to her: (1) failure "to secure safe and appropriate housing for the children"; (2) arrest for shoplifting in the presence of O.D. and endangering the welfare of a child; (3) inability to "provide basic medical care for the children"; and (4) inability "to meet [O.D.]'s mental health needs."  Mother and Father were not living with the children at the time the petitions were filed.  In February 2015, after holding an adjudicatory hearing on the neglect petitions, the Circuit Court (Moore, J.) found that the children were neglected.  See RSA 169-C:18, V (2014).  In its order, and in its order following the dispositional hearing, the court required DCYF to provide services to the grandmother, the parents, and the children.  See RSA 169-C:21 (2014).  DCYF developed a case plan; the first objective included that the parents "will locate and secure appropriate housing for the children" and "[c]reate a plan addressing how [they] will protect their children from exposure to substance abuse and domestic conflict."

In August 2015, the Circuit Court (Quigley, J.) terminated the grandmother's legal guardianship over the children, at DCYF's request, after finding that the guardianship was "no longer in the best interests of the three minor children."  The grandmother was dismissed from the RSA chapter 169-C proceedings.

The Circuit Court (Moore, J.) held review hearings in June, September, and December of 2015 to assess the parents' compliance with the dispositional order and case plan conditions.  The court determined that Mother and Father were "in partial compliance" at each hearing.  The children remained in an out-of-home placement.

2

In an order issued after a permanency hearing in March 2016, the Circuit Court (Moore, J.) found that DCYF had discussed "parental surrender with both parents." The court further found: "Both parents have indicated their desire to continue to participate in case plan services to work towards the proposed goal of reunification prior to a termination of parental rights trial being conducted." The court also found that the parents could not "demonstrate that the children would not be endangered in the manner adjudicated on the initial petition, if returned home" because they could not "demonstrate that the children will not be exposed to domestic violence and substance abuse." See RSA 169-C:23 (2014) (setting forth standard for return of child in placement pursuant to RSA chapter 169-C). The court found that it was anticipated that reunification between the children and the parents would be achieved in June 2016, and continued the children's out-of-home placement.

In July 2016, DCYF filed an assented-to motion to modify custody, requesting reunification of the children with the parents. DCYF represented that Mother and Father "ha[d] been participating in extensive parenting time," which had been "going well," and that they "ha[d] been able to provide for all the needs of the children," including maintaining "stable housing that is safe and appropriate for the children." DCYF also represented that the parents "ha[d] been compliant with Court orders and . . . achieving their case plan goals." The Circuit Court (Leary, J.) granted the motion and transferred legal and physical custody of the children to Mother and Father; DCYF maintained legal supervision and was ordered to provide referrals and support services, and to perform monthly home assessments. The children were reunified with the parents at the parents' home in Massachusetts on July 11, 2016.

Thereafter, the Massachusetts Department of Children and Families (MDCF) received "reports of concerns" about the children while they resided with the parents, which MDCF shared with DCYF. In November 2016, a DCYF family services worker went to the parents' home to evaluate whether it was safe for the children. After consulting with MDCF, DCYF filed an ex parte motion in the pending RSA chapter 169-C case in New Hampshire, requesting removal of the children from the parents' Massachusetts home. DCYF alleged, in part, that "[g]iven the drug use by [M]other and ongoing and escalating arguments between the parents[,] the children are not safe in the home."

The Circuit Court (Moore, J.) ordered the ex parte removal of the children from the parents' Massachusetts home on November 16, 2016. The three children were again placed in an out-of-home placement. In its ex parte order, the court ordered DCYF to file abuse or neglect petitions within 72 hours. DCYF concedes that these petitions were never filed, and argues on appeal that it was not required to file them because the conditions imposed upon the parents in the March 2015 dispositional order "still governed."

3

The court held another permanency hearing in February 2017. After finding that the children had been in an out-of-home placement for approximately 21 of the prior 25 months, the Circuit Court (Moore, J.) ordered DCYF to file termination of parental rights (TPR) petitions against Mother and Father. See RSA 169-C:24-a, I(a) (2014) (requiring DCYF to file TPR petitions when a child has been in an out-of-home placement "for 12 of the most recent 22 months"). DCYF subsequently filed the petitions citing RSA 170-C:5, III, which authorizes the termination of parental rights if a parent is found to have failed to correct the conditions leading to a finding of child abuse or neglect within 12 months of the finding despite reasonable efforts under the direction of the circuit court to rectify the conditions. The court appointed counsel to represent each parent in the TPR proceeding. See RSA 170-C:10 (2014) (amended 2017).

The Circuit Court (Quigley, J.) held a hearing on the TPR petitions and, in October 2017, ordered the termination of Mother's and Father's parental rights. The court rejected the parents' argument that the TPR petitions should be dismissed because they were not provided with an attorney during the underlying abuse and neglect proceeding, ruling that they were not statutorily entitled to counsel during the RSA chapter 169-C proceedings because they were both "non-offending parents." See RSA 169-C:10, II(a) (2014) (specifying the conditions under which the court "shall" and "may" appoint an attorney to represent an indigent parent in a "case of neglect or abuse brought pursuant to this chapter"). The court also rejected the parents' argument that DCYF was required to file abuse or neglect petitions against them after the children were removed from the parents' home in November 2016. The court found that DCYF had proved the statutory ground for termination of parental rights beyond a reasonable doubt. See RSA 170-C:5, III. The court also found that terminating the parents' rights was in the children's best interests. See In re C.M., 166 N.H. 764, 773 (2014) (if statutory ground is established, trial court must then consider whether termination is in child's best interest). This appeal followed.

II

Mother and Father raise two issues on appeal. First, they argue that the trial court violated their due process rights when it failed to require DCYF to file new neglect petitions when the children were removed from their home in November 2016. They contend that the filing of new petitions would have entitled them to both an additional twelve months to correct the conditions leading to the finding of neglect and to the appointment of counsel. DCYF asserts that because the original neglect case remained open and the court had already imposed conditions upon them in its March 2015 dispositional order, it was unnecessary to file new petitions. Mother and Father also argue that they were entitled to counsel in the neglect proceedings.

4

The parents' arguments raise issues of both statutory construction and constitutional law. We first address whether RSA 170-C:5, III authorizes a trial court to terminate the parental rights of an individual who has not been named as a respondent in an abuse and neglect proceeding if the conditions giving rise to the abuse or neglect finding are not corrected within the requisite twelve months. RSA 170-C:5, III provides that a petition for termination of the parent-child relationship may be granted if the trial court finds:

> The parents, subsequent to a finding of child neglect or abuse under RSA 169-C, have failed to correct the conditions leading to such a finding within 12 months of the finding despite reasonable efforts under the direction of the [circuit] court to rectify the conditions.

We have previously held that RSA 170-C:5, III "does not provide that a parent must have been the named respondent in an RSA chapter 169-C neglect proceeding before that parent's rights can be terminated. It requires rather that the parent in question have 'failed to correct the conditions leading to such a finding within 18 months[1] of the finding,' despite the [circuit] court's efforts to rectify conditions." In re Tricia H., 126 N.H. 418, 422 (1985).

We continued to recognize the distinction between RSA chapter 169-C proceedings and RSA chapter 170-C proceedings in In re Bill F., 145 N.H. 267 (2000). In that case, the father of Bill F. appealed an order of the trial court, issued during the neglect proceedings, that authorized DCYF to cease reunification efforts between the child and his parents. In re Bill F., 145 N.H. 267, 268 (2000). We observed that the issue in Bill F. was the process to be afforded a non-offending parent in a neglect proceeding in contrast to "a proceeding to terminate parental rights, [in which] a parent's failure to correct conditions leading to a finding of abuse or neglect is a specific statutory ground for termination of the parent-child relationship." Id. at 273.

We endorsed the continuing validity of our holding in In re Tricia H. in In re Juvenile 2006-674, where the respondent father argued that his parental rights could not be terminated because "he had nothing at all to do with the underlying factors" that led to the abuse and neglect proceedings and because two trial courts "expressly found that he neither abused nor neglected his son." In re Juvenile 2006-674, 156 N.H. 1, 5 (2007) (quotation omitted). We rejected his due process argument, observing that "although not the subject of the original neglect petition, the respondent has been a knowing participant in the abuse and neglect proceedings from the beginning" and "under continuing orders" of the trial court. Id. at 6. After detailing the services that he had been provided during the neglect proceedings, we concluded that our holding in

---

[1] In 1999, the legislature reduced the period of time from 18 months to 12 months. Laws 1999, 133:2.

<u>Tricia H.</u> applied with equal validity to the facts in that case. <u>Id</u>. at 7; <u>see</u> <u>also</u> <u>In the Matter of Jeffrey G. & Janette P.</u>, 153 N.H. 200, 204 (2006) (biological parents are presumed to be fit until found unfit in either RSA chapter 169-C or RSA chapter 170-C proceedings).

Having determined that RSA 170-C:5 does not require that the parents have been identified as offending parents in the original neglect petition, we turn to the merits of the trial court's ruling that, despite the reasonable efforts by DCYF to reunify the children, the parents failed to correct the conditions leading to a finding of neglect. The parents were represented by counsel at the hearing held on the petitions to terminate their parental rights. Notably, neither parent contests the trial court's dispositive ruling:

> [T]he court finds beyond a reasonable doubt that [the parents] have failed to correct the conditions that led to the finding of neglect and have not completed the tasks required by the court for the return of the children to the parents' care and custody. Even now, [they] remain unable to provide the primary care, custody and support of the child. The parents have not demonstrated an ability to parent their children to meet their physical and emotional needs. The parents were unable or unwilling to address substance abuse, domestic violence and parenting deficits within the time frame required by the statute.

These findings are supported by the extensive record before us. <u>See, e.g.</u>, <u>In re Zachary G.</u>, 159 N.H. 146, 153 (2009) (family division's findings will not be disturbed unless unsupported by the evidence or plainly erroneous as a matter of law). Although the Mother argues that "DCYF relied upon a petition that was not relevant to the work either parent was requested to perform," her argument is belied by the record. The order issued after the dispositional hearing, held on March 24, 2015, reports that both parents were present at the hearing. The order further identifies the "problems that need to be addressed to meet the needs of the child(ren) as: "Safe and secure housing to ensure physical safety and [freedom from] exposure to substance abuse and family discord" and "[p]arenting that meets their safety, developmental and physical needs." The order also identifies problems to be addressed by each parent; each is required to "provide a home that is safe and free from substance abuse and domestic violence" and to "prevent substance addiction from impacting quality parenting."

We are unpersuaded by the parents' argument that DCYF's failure to file new neglect petitions when the children were removed from their custody in November 2016 foreclosed the legal basis for the TPR petitions. RSA 169-C:3, XIX (Supp. 2017) defines a neglected child to include a child:

Who is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health, when it is established that the child's health has suffered or is likely to suffer serious impairment . . . .

RSA 169-C:24-a, I(a) (2014) requires the State to file a petition for termination of parental rights when "a child has been in an out-of-home placement pursuant to a finding of child neglect or abuse, under the responsibility of the state, for 12 of the most recent 22 months." RSA chapter 169-C contemplates that neglect is not a static condition, and that the process of reunification will take time. That the trial court authorized the return of the children to the physical custody of the parents did not resolve the ultimate question of whether the original neglect conditions had been corrected. Cf. In re Haley K., 163 N.H. 247, 251 (2012). Indeed, the extensive support services provided to the parents during the abbreviated reunification period and the continued legal supervision by DCYF indicate that the trial court did not believe that the conditions had been fully corrected. See In re C.M., 166 N.H. at 775 (holding that where appeal to superior court in neglect proceeding did not result in a "significantly different" dispositional order, the twelve-month period specified in RSA 170-C:5, III continued to run from the date of the circuit court's adjudicatory order).

The parents also contend that they were entitled to the appointment of legal counsel at the original neglect proceeding. We note that neither parent sought appellate review of any of the orders issued in the neglect proceedings, including the February 27, 2017 order of the circuit court that directed DCYF to file TPR petitions against them. Accordingly, to the extent that they attempt to challenge in this appeal from the TPR proceeding deficiencies in the abuse and neglect proceedings, their challenge is foreclosed. See, e.g., In re C.M., 166 N.H. 764, 781 (2014) (holding in appeal from TPR proceeding that failure to appeal dispositional order in neglect case resulted in final and binding order as to all issues raised and which could have been raised, including Father's right to have counsel appointed by court in neglect proceeding).[2]

Affirmed.

LYNN, C.J., and HICKS, BASSETT, and DONOVAN, JJ., concurred.

---

[2] We note that although "due process does not require that indigent parents have a per se right to appointed counsel in abuse or neglect proceedings under RSA chapter 169-C," In re C.M., 163 N.H. 768, 777 (2012), once the children and parents became members of the same household, it was within the trial court's discretion whether to appoint counsel. See RSA 169-C:10, II(a).